DAVIS and others, appellants, and VANDERVEER'S ADMIN-
ISTRATOR and others, respondents.

1. Under the Statute of Distributions of this state (*Nix. Dig.* 305, §§ 12,
13,) first cousins will take the personal estate of the intestate, to the ex-
clusion of the children and grandchildren of other first cousins deceased
Collateral relatives can not take by representation, except in the case of
the chidren of a deceased brother or sister of the intestate.

2. The effect of the proviso "that no representation shall be admitted
among collaterals after brothers' and sisters' children," is to limit or qualify
the right of representation among collaterals, so that they can take only
as next of kin, *per capita,* except in the one case of the children of the
deceased brothers and sisters of the intestate, among whom alone of the
collaterals the right to take *per stirpes,* by way of representation, exists.

By a decree of the Orphans Court of the county of Som-
erset, the surplusage of the personal estate of Dr. Henry
Vanderveer, late of said county, deceased, was ordered to be
distributed to and among his five *first* cousins.

Certain of the *second* and *third* cousins of Dr. Vanderveer
thereupon filed their petition of appeal in the Prerogative
Court, setting forth that the said decree was erroneous, for
that the said Dr. Vanderveer left him surviving, not only
the said five first cousins, but also the petitioners and others,
children and representatives of first cousins deceased; and
claiming that said children and representatives of first cousins,
deceased, were equally entitled to such share or portion of said
personal estate, with said first cousins, as their parents would
have been entitled to, if living, and that the surplusage of
the personal estate of the intestate should not be distributed
among the five first cousins, as by said decree adjudged and
decreed, but among said first cousins and children, represen-
tatives of deceased first cousins, surviving, giving to such
representatives of deceased first cousins the share or portion
of such personal estate to which their deceased parents would
have been entitled, if living.

The cause was heard before the Ordinary on a motion to
dismiss the appeal.

*Mr. Van Fleet* and *Mr. P. D. Vroom,* for motion.

*Mr. A. Clark* and *Mr. Williamson,* contra.

THE ORDINARY.

The motion to dismiss is on the ground that the appellants, by their own showing on the facts set forth in the petition of appeal, have no interest in the matter, and therefore no right to appeal.

The distribution ordered, was to the first cousins of the intestate, who survived him. The appellants are children of the other first cousins, who died before the intestate.

The proviso in the thirteenth section of the act concerning executors and administrators, " that no representation shall be admitted among collaterals, after brothers' and sisters' children," is taken from the English statute of distributions. That this applies to the descendants of all other collaterals, as well as to the issue of brothers and sisters, beyond their children, has been held in repeated decisions in England, and has been adopted by the courts of this state, and by the bar as the settled law. It ought not now to be questioned in any court here below that of the last resort.

If it is desired to have the decision of the Court of Appeals, an appeal can as well be taken from the order to dismiss, as from a decree on the hearing. The appeal must be dismissed.

From the decree of the Ordinary, dismissing said appeal, an appeal was taken to this court, and argument was thereupon had by

*Mr. F. T. Frelinghuysen,* (with whom was *Mr. Williamson,*) for appellants.

Dr. Henry Vanderveer died intestate, a bachelor, being an only child, and having no ancestors living. His nearest relatives are first cousins, several are living, several had died before the intestate, leaving children.

The question is, what distribution is to be made of the intestate's personal estate.

If some of the first cousins had not died, leaving children, there is no question that the first cousins would take the whole fund. If all the first cousins had died, there is no question that the second cousins would take the whole fund. But some of the first cousins being living, and some having died leaving children, *the question is,* do those children take their deceased parents' share? do they represent their parents?

In making distribution, those in the nearest degree of relationship must be sought. When representation exists, the representatives are held to be in the same degree of relationship as the stock they represent, and they take per stirpes and not per capita. Thus, if an intestate leaves one son living, and two grandsons of a deceased son, the two grandsons representing their father would take in the equal degree of relationship with the son (their uncle,) and would take half of the fund; they take according to their stock, per stirpes, not each for himself, so much a head, or per capita. If they take per capita, each of the two grandsons would take one third; but taking by "representing their stock" per stirpes, they divide their father's share between them, each grandchild taking one-fourth of the fund, and only the share that would have come to the parent, is divided among the children, no matter how many there may be; so that those in the same class with the parent, suffer no diminution of their share by the death of the parent; the parent's share goes to his children, and not to his collaterals.

So if an intestate leaves no children and no brothers or sisters, no uncles or aunts, then first cousins are the nearest relatives. We, the appellants, say that the children of deceased first cousins represent their stock and take their parents' share; the respondents say no, the first cousins living take the whole fund, to the exclusions of the first cousins' brothers' and sisters' children; that is the question.

That what we claim may present itself to the favorable

judgment of the court, we put our claim in the plain and clear words of the statute : that when there be no widow and no child, and no brothers or sisters or their children, distribution is to be made to " the next of the kindred in equal degree, of or unto the intestate, and their legal representatives as aforesaid, and in no other manner whatsoever." *Nix. Dig.* (*4th ed.*) 305.

It seems strange that when our claim is within the plain words of the statute there should be any necessity for argument.

But doubt is cast about this statute ; first, because it has seldom if ever occurred in our state that one has died intestate, leaving a considerable personal estate, without having had wife or children, brothers or sisters, and without leaving ancestors, and consequently the question whether there is " representation " among cousins has never been here adjudicated ; and secondly, doubt is cast over the plain words of the statute because, as the statute has its origin in the Civil or Roman law, and as representation was not allowed in that law among collaterals, except in favor of brothers' and sisters' children, it has been assumed in the treatises of law writers and by the dicta of courts that " representation " among collaterals is, under the statute, excluded except in favor of the children of brothers and sisters ; and this has been so held in defiance of the plain words of the statute.   If there were no sweeping propositions laid down by the writers of treatises on this subject, if there were no dicta by judges going beyond the case they were called upon to decide, this court would decide by simply reading the statute, that where first cousins are the " next of kindred unto the intestate " distribution is to be made to first cousins or to the legal representatives of first cousins.

I must show the court what these propositions of authors are, their error, how they originated, and how they are beginning to be disregarded and overruled in England and in this country, and then we will get a fair and rational construction of the statute.

If the court will disregard and overrule the propositions of authors, the unauthoritative dicta of judges in regard to the last clause of this statute, on which we base our claim, in the same manner that other courts have disregarded and overruled such propositions and dicta after they have been received a hundred years, then the court will construe the statute according to its words and true meaning, and in harmony with the other laws of our state; and will decide that when one dies without will, leaving one first cousin and two children of another first cousin, that the two children representing their stock stand in equal degree of kindred to the intestate, and take their parent's share, as the statute says they shall, when it provides that distribution shall be made to the "next of kindred in equal degree and their legal representatives," and will not decide that a first cousin shall take by survivorship his brother's share away from his children.

I shall first show what the civil law relative to distribution is, and how it is modified by the statute, and that the treatises and dicta of the courts are plainly opposed to the statute and in many respects to the civil law itself; and shall then call attention to the statute, showing that as plain as words can express, it declares that "representation" shall exist among cousins; and shall insist that this court cannot follow the treatises or the dicta, but must obey the statute.

I. Let me call attention to the civil law on this subject and to the origin of this statute.

By the old Roman law "representation" according to the stock in the distribution of estates was allowed among *descendants*, lineally, ad infinitum. So that if a man died intestate, leaving one grandchild by one deceased child, two by another and three by a third; the grandchildren all took per stirpes and not per capita; and the principle applied to great grandchildren and any other descendants.

This was the old Roman law. *Gaius' Institutes*, (the oldest law book extant), *p. 434, sec.* 8; *Cooper's Justinian,*

Davis v. Vanderveer's Adm'r.

(the Institutes), *p. 194, sec.* 6. This doctrine of representation does not seem under the old Roman law to have extended in any degree or manner to collaterals, when the succession went over to them; and the reason seems to have been, that when the direct heirs failed they looked for a master to the estate of the same name and blood as the deceased; therefore the law of the XII tables enacted, that if a man died intestate, without heirs of his own, his next relation on the father's side (agnatus proximus) should have the estate. See XII Tables, *Cooper's Justinian* 659.

The object seems to have been similar to the old Hebrew law *to keep up the family name and estate,* which was then effected by directing a brother to raise up seed to his deceased brother. Hence in those primitive days when collaterals were called to take, the reason for representation did not exist. The collateral might, as in this case, be of different name from the intestate. He might not descend from the male relative, but from the female line, from a married sister and not from a brother. To inherit, the collateral must have been of the same name and a *brother* or his descendants. The law as to requiring the collaterals to come from a brother was however modified so as to extend to collaterals who come from a sister, but "representation" among collaterals was not allowed. *Justinian's Institutes,* Cooper, *p. 207, sections 4 and 5; Gaius, p. 436, sections 15, 16, 17.*

Therefore while "representation" was found in the most ancient laws of Rome, it seems to have been confined to *descendants,* and did not extend to collaterals at all. This law was afterwards modified.

The old law of Rome is found in the Digests of which there are some fifty volumes. They contain what may be called the common law of the Romans.

The code of the Emperor Justinian in twelve books, was prepared about 550 years after Christ, by a board of lawyers, and submitted to Justinian, who, by his fiat, made them statutes which declared or modified the then existing law. The Institutes was a mere student's book.

After the code was made, Justinian still kept the lawyer board in existence, and they would from time to time submit new statutes "Constitutes Novellae," or the "Novels." There are 118 Novels, and were adopted about 543, after Christ. Chapter 1 clearly states the existing law as to "representation" in the case of descendants, and chapter 3 of same Novels extends it for the first time to collaterals, and is the foundation of the statute of Charles II. *Cooper's Justinian, pp.* 394—399.

There we find that the old Roman law allowed representation ad infinitum in the case of descendants, and allowed no *representation* whatever among collaterals, but required the nearest relative of the intestate descending from his nearest male relative, to take.

The Novel of Justinian reaffirmed "representation" as to descendants, abolished the requisite that the collateral should be in the male line, and extended "representation" to brothers' and sisters' children.

It is stated in treatises and by the dicta of courts that the civil or Roman law does not recognize "representation" beyond the second degree of *lineal* descendants, and assuming such to be the civil law, and that this statute of 22d Charles II. is taken from the civil law—the civil law, as it is assumed to be, has been administered, and not the statute; and it is both an error to suppose such to be the civil law and an error to suppose that the statute is simply declaratory of the civil law; and in direct defiance of the statute it has been held by the authors of treatises and dicta of judges that there is in the distribution of personal property no representation in the *lineal* line. Thus it is held that where one dies intestate, leaving a great granddaughter descended from his deceased son A, and four great grandsons descended from his son B, the fund is not to be distributed to them as representing their stock—per stirpes—so that the great granddaughter should take one moiety and the four great grandsons the other moiety, but it is held that representation

ceased with the grandsons, and these five great grandchildren take per capita, each one-fifth of the fund.

This is so held by Toller on Executors, which has been the accepted text-book on the subject, for perhaps one hundred years. *Toller on Executors,* (7th edition by Whitemarsh,) *p.* 374; *Williams on Executors, vol.* 2, *p.* 1347; *Griffith's Law Register, vol.* 4, *p.* 1257.

These dicta are as repugnant to the statute as to the civil law, which enacts, section 13, that one-third shall go to the widow, and the residue to the children, and such persons as legally represent the children.

I do not suppose there is a member of this court, who would so administer the law; and yet there is as much authority for so doing as there is for holding that representation does not exist among cousins, and under the words of this statute, there is even less reason for excluding representation of cousins than there is of lineal descendants.

Now let me trace the circumstances that gave rise to the statute of 22d Charles II., and see how it differs from the Novel of Justinian which is unquestionably its basis.

The statute was enacted in 1671. Before the Reformation (which was in 1517) the Ordinary, who was Archbishop, Bishop, or Deputy, was entitled to the administration, paid the debts if there was that to pay them with, and kept the surplus. Personal estate was of little consequence : a coat of mail, an oak chair and black cattle (the word chattels comes from the Norman word for cattle,) generally constituted the personal estate.

After the Reformation the law required the Ordinary to demand a bond that the administrator would distribute the surplus *as he directed.*

Afterwards the statute of Edward III. directed the Ordinary to grant administration to the "best friend" of the intestate. It was then claimed that under that statute neither the Ordinary, or any civil court, could compel him to distribute the surplus, and Sir Walter Walker, an eminent

civilian, drew up this statute to get the estates of intestates beyond the control of Pope, or Bishop, or Roman law. See 6 *C. E. Green, p.* 160, for history of statute.

Sir Walter engrafted on every part of the statute the principle of the English common law which is "representation, lineal and collateral." He undoubtedly had the 118 Novels of Justinian before him (Cooper's Justinian 399.) No one can read the three chapters of that novel, finding the very words and expressions introduced, and doubt that it was the basis of the statute. But while that carefully guards *against* representation among collaterals according to the principle of the civil law, he as carefully provides *for* representation according to the principle of the common law.

II. Now let us look at the statute and compare it with old Roman law and the Novel of Justinian.

A *prefix* to the statute is enacted entirely foreign to Roman law or the Novel, but familiar to the common law, to wit: in section twelfth it is provided that where there is no wife or children there shall be made a "just and equal distribution to the next of kindred to the intestate, in equal degree or *legally representing their stocks, each according to his or her respective rights,* pursuant to the law in such cases, and the rules and limitations hereinafter set down."

The terms "next of kindred" and "stock" are common law words, not civil. 2 *Black. Com.* 224; *Ib.* 234.

Representation is engrafted on the whole statute, subject in the language of the statute "to the rules and limitations hereinafter set down."

Read twelfth section—that word "stocks" and those who "legally represent next of kindred" are phrases that have a meaning in England, and are so introduced. No one under the old Roman law, legally represented a collateral, and under the Novel of Justinian there was only *one case* in which a collateral had a legal representative, and that was the case of a brother or sister, and in that case representation was restricted to his or her children.

And the appellees now before the court, in order to exclude the children of first cousins who are deceased, in the face of these plain words which stamp representation on the whole statute, say that representation among collaterals only exists as by the civil law, to wit, that children represent a deceased brother or sister.

The statute says distribution *in this case* shall be made to "the next of kindred to the intestate." We both agree that the first cousins are "next of kindred to the intestate."

But the statute says further, that it shall go to the next of kindred "in equal degree, or legally representing their stocks, each according to his or her respective right." The statute contradicts the proposition of the appellees and says, that among "the next of kindred," be they lineal or collateral, "representation" per stirpes, according to "their stocks, each according to his or her respective right," shall exist.

If intestate left one brother living and three children of another brother deceased, the brother takes one-half of the fund, and the three children of the other brother take the other half, because representation according to their stocks, each according to his or her respective rights, exists by the statute. It will not be denied that this is the rule as to brothers and sisters and their children; but the term "next of kindred" includes first cousins as well as brothers (if it does not the appellees have no claim,) and representation is by the statute enacted to exist as to "next of kindred" eo nomine, and not as to "brothers and sisters."

And inasmuch as "next of kindred" includes first cousins as well as brothers and sisters, if the case of first cousins can be distinguished from that of brothers and sisters, as to whom representation is admitted, it must be by reason of the words which follow this general declaration of the principle of "representation," to wit, the words "pursuant to the laws in such cases, and the rules and limitations hereinafter set down."

Now what restriction to this general representation accor-

ding to stocks, per stirpes, do we find "in the rules and limitations hereinafter set down?"

The statute adopts nearly the language of the Novel in limiting representation as to brothers and sisters. There was no pretence in civil law of representation as to any other collateral, and it says (*Cooper* 400): "But among collaterals, we allow the privilege of representation to the sons and daughters of brothers and sisters, and no further." The statute says: "*Provided*, that no representation shall be admitted among collateral, after brother's and sister's children." But the *circumstances* under which this limitation is applied under the statute is by no means, as at the civil law, or as in the Novel; there it is a universal limitation. In the statute it is *only* where they come in as next of kindred, *and one moiety of the estate has been distributed to the widow.*

In that case, in favor of the surviving brother or sister, or nephew or niece, they are to succeed to the whole of the other moiety, one-half of the estate having been absorbed by the widow. The statute says, section thirteen, that when there is a widow who takes one-half the fund, the living brother or his children shall have the benefit of survivorship, as against great nephews and great nieces; and the statute expressly declares, that when there is *no* widow, the estate goes to the children, "then to the next of kindred, and their legal representatives." So a brother or nephew does not have the benefit of survivorship, except where half of the estate goes to the widow. *Sec.* 14.

That is the restriction the foregoing general prefix, contained in the twelfth section engrafting representation on the act, is subject to, and is the only limitation of the general rule of representation. In every other case the declaration of the twelfth section as to "representation" is expressly re-affirmed in the thirteenth section, and if the thirteenth section did not re-affirm the doctrine of "representation" asserted in the twelfth section, the general principle of "*expressio unius, exclusio est alterius*" would prevail.

Here I may as well show the error of holding that

brothers' and sisters' children do not take by representation when the statute says they shall; an error supported by as much authority as that which holds that *under the statute* representation does not exist among collaterals.

Would any one of your Honors question that the statute in effect said that representation *was to be allowed* as to brothers' and sisters' children, by saying it should not in a given case be allowed after them? And yet the treatises and dicta *hold* that if an intestate had a brother or sister, both having died at his decease, the brother leaving one son, and the sister leaving two daughters, representation does not exist; the son does not take his father's moiety and the daughters their mother's moiety, but that they take per capita each one-third. *Walsh* v. *Walsh, Prec. in Chan.* 53.

A has three brothers, one dies leaving three children, another leaves two, and the third, five; they take all alike, each one-tenth, per capita, and not per stirpes; none take by representation.

In *Lloyd* v. *Tench,* 2 *Ves., sen.,* 215, the intestate left a daughter of a sister and the son of a brother; they did not each take by representation the moiety of his or her respective parent, representation was not allowed; but they took as next of kindred, which made them one degree more remote than if they had taken by representation (the third degree,) and as there was an aunt of the intestate in the same degree they shared the fund, each taking a third.  2 *Wms. on Ex'rs* 1363.

This too, when the statute says in effect that representation *shall* extend to the children of the brother and sister of intestate.

It is clear that this court is not precluded by consistent adjudication from giving the true construction to this statute. That as such constructions as have been given on other parts of it you could not adopt, and after standing one hundred years have been overruled and a construction adopted which in principle covers this case, so the court is at liberty to administer the statute according to its words and meaning.

A is a brother living and has ten children ; B is a brother dead leaving one child ; the child of B would take one-half with A, his uncle ; A dies, and B's child takes only one-eleventh.    It is contrary to the civil law, the Novel of Justinian, and to our statute.

The statute having in the twelfth section asserted the general doctrine of representation, in the thirteenth section applies it in the following cases :

1. When there is a widow and children, it directs the surplus to be distributed, one-third to the widow, and all the residue, by equal portions, to and among the children of such intestate, and such persons as *legally represent such children,* in case any of such children be then dead.    The court will observe that the statute nowhere says that " representation " shall extend to children's children, but only to children, and hence these erroneous decisions.    Representation is, however, profusely extended lineally ad infinitum, under the phrase " those who legally represent them ;" but that phrase extends to cousins as well as to children, and any adjudication that extends representation to grandchildren extends it also to second cousins.

Is there any doubt that the children and *their descendants,* under the term, those who " legally represent them," take ad infinitum ?    And yet it is true that Toller, Williams, and Griffith, whose dicta have perverted the law for one hundred years, have held that representation did not extend beyond the immediate descendants of children, or beyond children's children.    And if you will exclude representation among cousins you must also exclude it among lineal descendants, for the identical provision as to representation is in the statute applied to cousins that is applied to children.

Gaius, Justinian's Novel, are against the dicta, and finally the courts of England have awoke from their slumber.    *Law Reports, Eq. series, March,* 1872, *p.* 292 ; *In re Ross Trust.*

Sir John Wickens, V. C. :    " The question reserved for judgment in this case is one as to the operation of the *Statute*

*of Distributions*, where the intestate left grandchildren and great grandchildren, but no children.

"*Alexander Ross*, by his will, dated the 17th day of November, 1819, gave one-fifth of his residuary estate to his daughter *Margaret Ross* for life, with remainder to her children; and in default, 'in trust for the person or persons who, under the statute made for the distribution of the estates of intestates, would then be entitled thereto, in case I were then to die possessed thereof and intestate; and to be divided between and among such persons, if more than one, in the proportions in which the same would be divisible by virtue of the same statute.'

"In June, 1871, there were two subsisting lines of the testator's descendants; the one springing from *Alexander Ross* the younger, and represented by two grandchildren of the testator and one great grandchild, the only child of a deceased grandchild; the other springing from *William Francis Ross*, and represented by two grandchildren of the testator, two great grandchildren springing from his dead grandchild *William*, and four great grandchildren springing from his dead grandchild *Grace.* The question on the petition is as to the shares in which *Alexander Ross*' estate is to be distributed among those persons.

"It is singular that a question of this sort should be uncovered by judicial authority; but no case bearing on it was cited at the bar, and I have been unable to find any.

"The *Statute of Distributions* deals separately with the case of descendants, and that of next of kin not descendants. The case of children is provided for by the fifth section (which is referred to in the third,) and the case of next of kin, not being descendants, by the sixth and seventh sections. The general effect of the provisions is, that (supposing there to be no wife) the estate, in case there are descendants, shall go between the children *and their representatives;* and in case there are no descendants, shall go amongst the next of kin or their representatives; and that the division is per capita where all the takers claim in their own right, and per

stirpes where they, *or some of them,* claim as representatives of another person.

"It has been long settled that the word 'representatives' in this act includes only 'descendants.'

"It has been further settled that where all the persons entitled to claim are collaterals equally near of kin, for instance, second cousins twice removed, they take per capita, because they all take in their own right; but that where there are no ancestors or descendants, and the nearest of kin are brothers and sisters, but there are also children of dead brothers and sisters, the latter, though not of the next of kin, may claim as representatives of the brother or sister from whom they spring, and may stand in the place of that brother or sister for the purpose of distribution; so that the distribution is per stirpes."

And here the court puts forth a mere dictum as to representation among collaterals, which he might wisely have omitted while washing away dicta as to representation among lineals, which have more color of right in the statute. But it is mere dictum and not authority.

"This privilege is expressly limited by the statute, and does not extend to any more remote descendants of brothers and sisters than their children, and does not apply at all to any case where the next of kin are all more remote than brothers and sisters.

"There are, therefore, two cases provided for by the statute, viz.: 1, where there are children, or the representatives—*i. e.,* the descendants—of children; 2, where there are no descendants.

"It is the former case alone that has to be dealt with here. Considering the question as one solely on the construction of the statute, it is difficult, I think, to resist the conclusion that, if there *are descendants,* but no children living to share the estate, it is to be divided *into as many shares as there are children* who have left living descendants, and that the descendants of each such child are to take as representing the child, and of course, only the child's share.

"Feeling, therefore, free to follow my own clear opinion on the construction of the statute, I hold that in this case the sum in question must be divided into moieties, of which one is divisible among the descendants of *Alexander Ross* the younger, and the other among the descendants of *William Francis Ross;* the division among each class being in each case per stirpes."

It is idle to talk about this court being bound by dicta, after the courts of England have disregarded them. I shall show the court we are much more free than they. The dicta have undoubtedly been based on the *words* of the 13th section : that the distribution is to be to children and *their* legal representatives, in the first item of the 13th section.

In deciding the case cited, the court has given construction to the last item of that section which provides, in the case of no widow, that distribution is "to be to and among the children, and in case there be no child, then to the next of kindred, and their legal representatives."

The very term "equal portions," as connected with children's children, proves representation, for how could the "portion" be equal when there was one son and two children of another deceased son, unless the two grandchildren took per stirpes, by representation, a moiety with the son's moiety, and so on.

2. In case there be no children "nor any legal representative of them," then one moiety to the widow and the residue to every of the next of kindred who are in equal degree, and "*those who represent them;*" provided that no representation shall be admitted among collaterals of the brothers' and sisters' children. A very wise provision ! As all collaterals are in the distribution excluded in favor of children and childrens' children ad infinitum, so where half the fund is taken by the widow it is proper that remote collaterals should be excluded in favor of brothers and sisters and their children.

3. In case there be no widow, then all is to go to the children ; and if no child, then to the next of kindred in equal degree and "their legal representatives."

The term "legal representatives" of next of kindred means here what it does when used three times before in the same section; twice as to legal representatives of children, once as to legal representatives of next of kindred; it means the children of next of kindred.

4. If no wife nor children, (14th section) but a mother with brother and sisters, "the representatives of them shall have an equal share with her, *anything in this act or any law to the contrary* notwithstanding; and here we have an instance at once, when, in case there is no widow to take half of the estate, "representation" without any limit is expressly assured to brothers and sisters.

III. The only question that remains to be considered in the construction of the statute, is whether the term "next of kindred and their legal representatives as *aforesaid*," can mean anything other than the descendants of that class who are the next of kin, to wit, in this case the descendants of first cousins who have left children. If it does mean that, of course the second cousins in this case represent their parents.

1. It says "next of kindred and their legal representatives as aforesaid." Three times in the section that phrase has been used, in a way that it can mean nothing other than the children of those who would take if living, and here it means the same, and strengthens itself by appropriating the clear meaning of the other phrases by saying legal representatives "*as aforesaid*." In one of the cases, to wit, the provision as to lineal descendants where it says "those who legally represent such children," we have the adjudication in favor of representation ad infinitum despite the absurd "dicta" that representation only extends as far as "children." *Ross' Trust, L. Rep., March,* 1872. What representation means among children, it means among "next of kindred."

2. That "descendants" is the received meaning of the term "those who legally represent them," whenever it occurs in the statute, see *same case, p.* 293. "It has long been settled

that the word 'representatives' in this act includes *only* descendants."

3. It is clear the term does not mean executors or administrators, but children or other descendants; *because* executors and administrators cannot take as such in any case. If *their* testator or intestate be not in being to take when the time for taking happens, when the distributive share vests, there is no distributive share in existence for them, but children stand in their parents' place, "*jure representationis.*"

4. The phrase must mean descendants, because in the statute the fund is given to children, and if they be dead *to their legal representatives;* and if there be any representatives of children, a *third* goes to the widow *instead of a moiety,* and none to brothers and sisters. Those words meaning "descendants," and only by so meaning, withhold the fund from those who otherwise would take it.

5. The whole purpose of the statute of distributions is to designate *the persons* who are to take, and when one individual cannot take, his representatives are designated; it must refer to *his* children, because if *they* are not meant others take under primary designation of their own and not by representation, and so the phrase would have *no* meaning. Thus, if "children and their legal representatives" does not mean "children and their children," collaterals would come in before children's children.

The phrase does not mean second cousins when all the first cousins are dead, for they take *not* as representatives in that case, but directly from intestate.

If then by "representatives" are meant "children and descendants," the last item of section 13th, which covers the case in hand, is plain, and *clearly provides for calling in the children of deceased cousins to take distributive share with cousins,* and this without any qualification whatever. Any dicta to the contrary are not worth minding against the clear words of the law. The late case of Ross' trust shows that "dicta" in such cases are not worth a rush, and under the

authority of that case "representation" cannot be extended to children without extending it to cousins.

The language of that part of the statute with which we have to do, is "the next of kindred in equal degree and their legal representatives."

Before considering what that means, let me call attention to what the phrase "in equal degree" means. It may be said that first cousins and second cousins are not in equal degree. That is true as to second cousins, who are the children of *living* first cousins, but when the first cousin is dead, leaving children, if representation is allowed they take their parents' place, and are in equal degree. *Fidler* v. *Higgins,* 6 *C. E. Green* 151.

It is a common law phrase introduced into the statute. This phrase "equal degree" thus explained, what does "next of kindred and their legal representatives" mean?

The statute might have said "the next of kindred" and there stopped; that is what our opponents say it means as it stands. That was the case in our statute of 1676, as we shall presently see, and the phrase "and their legal representatives" was added for the very purpose of giving "representation among next of kindred." For what other purpose are those words added?

What do the words "in equal degree and their legal representatives" mean, other than "the nearest living relative, including all who are dead of their class by their legal representatives." This is what "in equal degree and their legal representatives" means, and all the general impressions and dicta in the world cannot change it.

Let me read the statute, substituting first cousins for "next of kindred." "If no widow and no children, distribution shall be made to the first cousins in 'equal degree and their lawful children' representing them." Is there any doubt about it? It does not say to first cousins *if living*, it says the contrary by saying in effect, *if dead*, to their children.

But the construction of this statute is plainer here than in England.

The statute of Charles II. was enacted in England in 1671, and we had a statute of distribution adopted in 1676. The date of the statute is found in *Leaming and Spicer, p.* 409, *provision* 403, directing the administrator to secure two parts of the estate to the children, and one part to the wife ; and if there be no child, then one-half to the next of kindred, and the other to the wife. Re-enacted November 21st, 1681. *L. & S.* 430.

And when we adopted this statute in 1794, (*Pennington's Laws,*) we adopted it as amplifying the old statute, adding to the words "next of kindred" the words "and their legal representatives." We did not adopt any of the principles of the twelve tables of Rome, which among other things provide that the father shall have the right over the life of his children. And when in 1794 we engrafted on our statute of distribution the doctrine of representation among next of kin, we also then introduced the *one restriction,* that when there is a widow who takes half of the fund the brothers and sisters of the intestate and their children are to be favored as against more distant kindred.

This statute of Charles II. is introduced here only as if Walter Walker had sent a copy of it in a letter. It is to be construed in harmony with our institutions and laws. That harmony requires that when one dies intestate, leaving a first cousin, and the children of another first cousin, the first cousin living shall not by survivorship wrest to himself from the children of the other the distributive share that would have belonged to their father, because we have abolished survivorship unless it is expressly stated that the estate is a joint tenancy and not in common.

It is not in accordance with justice that one who would have had, say the half of the estate if his brother had lived, shall have the whole by depriving his brother's children of it in the event of his brother's dying.

It is in accordance with our law that an estate shall be generally divided and not go to a favored few. Males are no better than females; we have altered the common law in that. The oldest son is no more favored than the youngest daughter; we have altered the law in that respect. We will not suffer estates by will or deed to be so tied up that a privileged few shall enjoy them; we have abolished entails; and the abolition of primogeniture and entails have done as much to make us a free and prosperous people as the fundamental political doctrines of our land.

This statute should be construed according to its meaning and words, and *will be*, disregarding the Novels of Justinian, and the twelve tables, and the absurd and overruled dicta of authors and judges.

Again. There is a statute which I may say is in pari materia with this. It relates to the distribution and descent of the estates of intestates; it only differs from the statute in question, in that this relates to personal and that to real estate. Statutes are in pari materia when they relate to the *same person or thing. Smith's Com., p.* 751. Here the person is the same, and the thing is his estate. English laws concerning paupers and their Bankrupt Acts are held to be in pari materia. The whole system of legislation upon a subject may be taken in consideration in order to aid in the construction of a statute.

When one seized of real estate dies intestate, without issue, brother or sister or their issue, or father or mother, and shall leave several persons "all of equal degree of consanguinity, to the person seized," the lands, &c., shall go to the said several persons *in equal degree* of consanguinity to the person seized, *in equal parts,* however remote from the person seized the common degree of consanguinity may be." *Elmer's Dig.* 131, 132.

Land is to go to the persons of equal degree of consanguinity. Now the general impression was, that second cousins

would not inherit with first cousins, because not in *equal degree*, because they could not take in equal parts; and in this statute there is *no provision for representation* as there is in the statute we are considering. But as in the case of personal estate the statute expressly provides, as we have seen, for "representation," so as to real estate the common law is held to provide for representation which the statute omits; that being supplied the second cousins represent parents, and are in equal degree, and as they take the parents' share, they take in equal portions. *Fidler* v. *Higgins*, 6 *C. E. Green* pp. 140, 145, 146, 147.

This decision was obliged to overrule impressions entitled to much respect.

This case settles the law, not only as to estates of intestates, but will give construction to many wills, as when a testator makes a bequest to some institution, and residue to my nearest kindred and their legal representatives.

*Mr. C. Parker*, (with whom was *Mr. Van Fleet* and *Mr. A. Wurts*,) for respondents.

1. If the question were new, the estate of the intestate goes, by the words of the statute, equally among his next of kin, excluding, in the case of collaterals, all representation by parties less related to him than are the children of his brothers and sisters.

2. But the question is not new. This construction is two hundred years old, and unvarying. And history shows that to have been the meaning of those who drew this statute. 4 *Burns' Ecc. Law* 356; *Roberts on Succession* 31–32; *Sir T. Raymond* 506.

3. At all events, this construction being repeatedly established and acquiesced in, was adopted into the law of this state, and can only be changed now by the legislature. 2 *Bl. Com.* 515; 4 *Griffith's Law Reg.* 1257; *Fidler* v. *Higgins*, 6 *C. E. Green* 160.

4. To say that English Chancery has overruled old text books and dicta as to this statute in another point, proves nothing. Especially as the case cited affirms our construction of this point, and we stand not on text books, but numerous adjudications.

To say that the proviso only refers to that part of the statute which precedes it, is incorrect. The last clause, by saying the estate, in case there be no widow or child, shall go to the next of kin and their representatives " as aforesaid, and in no other manner whatsoever," repeats the proviso. Yet this repetition was unnecessary. Could the legislature have intended a different rule when there was neither widow nor children, than that established when there was a widow ? A different rule with all the personalty than with half?

To say that this is the first case in reference to cousins, seems illogical when so many cases adjudicate the same principle now invoked.

To say that representation is forbidden as to nearer relatives and allowed as to those so far off as second cousins, approaches the absurd. The statute aims at excluding distant collaterals, because their number is likely to fritter away estates by distribution among people probably unknown. The argument made stultifies the legislature.

The only other meaning possible to the restrictive words is, that there shall be no representation after children of brothers and sisters, of collateral kindred. Certainly there is some restriction. Does the case show that these claimants are such children ? It only states them to be children of deceased cousins. Whether their parents were brothers or sisters of the cousins who claim, does not appear.

In no event, then, can they succeed.

The opinion of the court was delivered by

BEDLE, J.

This appeal is from the decree of the Ordinary, dismissing an appeal from a decree of distribution of the Orphans Court

of the county of Somerset. The intestate, Dr. Henry Vanderver, was never married. His nearest relatives at his death were five cousins, to whom his whole personal estate was ordered distributed. The appellants are his second and third cousins, and they claim a share in the distribution as representatives or descendants of other cousins deceased in the lifetime of the intestate. The question for decision is whether, under our statute of distributions, (*Nix. Dig.* 305, §§ 12, 13,) the five cousins take the whole personal estate, to the exclusion of the children and grandchildren of the other cousins deceased—or, in another shape, whether collateral relatives can take by representation, except in the case of the children of a deceased brother or sister of the intestate. Our act was passed in 1795, and is in all material respects, (so far as it affects the question before us,) a transcript of the act of 22 *and* 23 *Car. II., cap.* 10, the analogous proviso in which latter act is in these words : " That there be no representation admitted among collaterals after brothers' and sisters' children." It has been well settled by the courts in England, for over a century and a half, and always acted upon, so far as anything to the contrary appears, since the passage of the act, that the effect of this proviso is to limit or qualify the right of representation among collaterals, so that they can take only as next of kin, *per capita*, except in the one case of the children of deceased brothers and sisters of the intestate, among whom alone, of the collaterals, the right to take, *per stirpes*, by way of representation, may exist. *Carter* v. *Crawley, Sir T. Raym.* 496 ; *Maw* v. *Harding*, 2 *Vern.* 233 ; *Pett* v. *Pett*, 1 *P. Wms.* 25 ; *S. C.*, 1 *Salk.* 250, and 1 *Ld. Raym.* 571 ; *Blackbrough* v. *Davis*, 1 *P. Wms.* 41 ; *Bowers* v. *Littlewood*, 1 *P. Wms.* 594; *Caldicot* v. *Smith*, 2 *Show.* 286 ; *Woodroff* v. *Wickworth, Prec. in Chan.* 527 ; *Walsh* v. *Walsh, Prec. in Chan.* 54 ; *Durant* v. *Prestwood*, 1 *Atk.* 454 ; *Stanley* v. *Stanley*, 1 *Atk.* 455 ; 2 *Vesey, sen.*, 213 ; *Toller on Ex'rs* 383 ; 2 *Wms. on Ex'rs* 1298 ; 2 *Black. Com.* 515 ; *Bac. Ab., Ex'rs and Adm'rs I.* ; 2 *Kent's Com.* 425 ; 4 *Burns' Ecc. Law* 358 ; *L. R.* 13 *Eq. Cases* 286, *Ross' Trust.*

This construction of the English statute was well under-stood when our act was adopted, and since then it has been recognized in our treatises in common use, and been approved of by the learned of the bar. *Griffith's Treatise* 292; *N. J. Justice* 99; 4 *Griffith's Reg.* 1257.

Besides, we have no doubt that the Orphans Courts of the state have followed that construction. The same, we think, is also justified by the natural reading of the statute. It was intended in section thirteen that, whenever the estate in whole, or in part, (whether a widow or not,) goes to col-laterals, the right to take by representation, among them, should be limited to the children of the intestate's brothers and sisters.

Under this view, the appeal of the Ordinary was properly dismissed, and his decree should be affirmed, with costs, to be paid by the appellants.

The whole court concurred.